Peck, J.
(dissentiente.) The question presented upon the record, and now to be decided, is, whether this case, being an action of detinue, can be revived against defendants.
The parties have this agreement of record, that for the purpose of settling the abatement, it is agreed, that Robertson, the intestate, died possessed of the negroes; that they came to the hands of the administrators as part of the intestate’s estate, and are either in their possession or hired out for the benefit of the estate.
I come to the opposite conclusion from my brother Judges on this agreement. I think it has much to do in the question to be settled. From the very terms of it, the object was to settle finally the controversy touching the negroes. They are held and hired out, and the proceeds of their labor set apart to await this suit, or they are held subject to the order of the court touching them, and their proceeds on the question of right as it was in Robertson.
This is my interpretation of the agreements of record, taking them together. According to the late British authorities, the action of detinue may be revived, provided it depend upon, such facts as do not infer a trespass committed; as for instance, a bailment, or the like.
Hence it appears, that the facts of the case, rather than the frame of the declaration, should be the test in a point like the present. But in detinue, the declaration may be founded in fiction, even on a bailment. It might be founded as on a loss and finding, and yet the evidence would be admissible; for fictions may be resorted to for the attainment of justice, but never to defeat it. I am as much at liberty to suppose the action to arise on a case of bailment, as out of a trespass. The declaration proves neither the one nor the other; for if a trespass had been committed, that is a variance by the frame of the declaration, and the deti- *155 nue is the matter in issue, not a bailment or commission of trespass. When it is said in the books, that the right to revive, or not to revive, depends upon the facts, it must mean facts to be shown by him opposing the revivor of the suit. The agreements, therefore, in effect, admit a case such as can be revived, because they desire a bearing upon the right; and do not, by opposing facts, resist the legal right to revive. What are the reasons argued in the British books, why detinue cannot be revived? “Because the executor or administrator cannot wage his law.” In this state there is no wager of law; the reason of the rule, therefore, has ceased. Many of the cases relied upon against the revi-vor, are those of much antiquity. It has been the pride, of what I will call more enlightened times, to discountenance all pleas tending to delay; as these were found to pervert the objects of justice, as well statutes, as the rules and decisions of courts, have modified and controlled such pleas for the saving of costs and the furtherance of justice.
But these latter remarks, especially, apply to our own country. The statutes are numerous, and pursuing them through a series of times, this continued object was had in view, “investigation upon the merits.” What hardship does it impose upon an executor or an administrator, holding specified property in his fiduciary character, knowing all the facts touching the right to it, to be compelled to give it up?' What hardship, when he has laid aside and kept the proceeds of it by him to await a contingency, to be compelled to surrender that also? What hardship, to be compelled to account out of the estate of his testator or intestate, for such money as he had received and laid by to await the event of a suit, which he admits by his agreement of record, jeopardized it? As to the executor or administrator, he loses nothing. If he faithfully executes the trust reposed in him, and the property and money be *156 taken by due course of law, those he represents lose nothing, which, in justice, they ought to hold. And it is not to be forgotten in this, as in every other case, that where an executor or trustee acts, they will not be injured so long as they act honestly, and execute the trust faithfully. These representatives have so acted; they hold the property for the owner, and in substance state the fact to be so, in their agreements of record. They could not tell where the legal title was; their possession followed the possession of the estate. This was an evidence of right; but the ultimate and final settlement of the question might have depended upon facts which it was hazardous for them to weigh or determine on; and while, for this reason, it was proper and honest in them to hold the possession, it was equally proper and honest to place themselves in relation to that property, exactly where he whom they represented had stood, before they came to the office of executor.
A continually expressed object of the legislature has been to put our courts rather upon the enquiry of the matter of the right, than the enquiry as to form: hence this court are forbid to reverse except upon the merits. So both the practice of the courts and the acts of assembly relating to the subject, take the doctrine of abatement with the utmost strictness. Hence I am compelled to go according to what I understand to be the express wish of these parties, and remand this cause for a trial upon the merits. See Martin’s Rep. 42, 77: 1 Hay. Rep.
Judgment affirmed.